IN THE

# SUPREME JUDICIAL COURT

FOR

THE COUNTY OF LINCOLN, MAY TERM, 1833.

10 201
89 380

## KNOX & al. vs. SILLOWAY.

From the nature of the estate, a tenant in common of land, in the enjoyment of his legal rights, must necessarily be in possession of *the whole*.

Where one received a deed of a mill privilege, containing an express *exception* of a certain rock in the stream, which deed he caused to be recorded, and then built a dam, one end of it resting against the excepted rock, without making any *claim of title*, it was *held* that, he could not be considered by the owner as *tenant of the freehold* in the rock, in direct contradiction of the terms of his deed.

Where, in the Court below, the defendant pleaded the *general issue* as to part of the demanded premises, which was joined and a trial had thereon; and afterward in the Supreme Court, he had leave to amend by withdrawing that plea, and pleading a general *non-tenure*, on which issue was also taken, it was held that, *that fact* was not *evidence* to sustain the issue for the plaintiff as *last formed*.

A. gave a deed of a lot of land to B. which was never registered, and B. conveyed the same to C. by deed which was registered; after which B. gave up to A. the deed he had received from him, and it was thereupon destroyed; A. then conveyed to D. who knew of the fraudulent cancellation of A's first deed, and the latter conveyed to E. a purchaser for a valuable consideration without notice of the fraud; — *held* that, E. was entitled to hold against C.

VOL. I.                    26

Knox & al. *v.* Silloway.

An *original* deed may be received as evidence *without proof of its execution,* in cases where *an office copy* may be used.

Where the real demandant, in an action pending in the name of others for his benefit, had in his own name, after the commencement of the first named suit, recovered judgment of the same defendant, for the same premises, it was *held* that, such facts were properly pleadable *in bar.*

And such plea was further held to be sufficient, though the facts were pleaded *generally* in bar of the action, and not in bar of the *further maintenance* of the action.

THIS was a *writ of entry* brought by the demandants to recover seizin and possession of a tract of land of thirteen acres, lying in the town of *Union,* in which the demandants count upon their own seizin within twenty years and a disseizin by the defendant.

As to 10 acres, called the 10 acre lot, part of the demanded premises (excepting from the same three acres conveyed to the Cotton and Woollen Factory) the defendants pleaded the general issue; which was joined. As to an undivided moiety of three acres, called the mill lot, and all other parts of said demanded premises, not before in said pleading, nor therein after described, the defendant pleaded a general non-tenure, and issue was taken thereon.

As to the other undivided moiety of said *mill lot,* he pleaded a recovery of the same since the commencement of this action, by one *Walter Blake,* who in said plea was alleged to be the real demandant in this action; to which the demandants demurred. And as to a certain other part of said demanded premises, being a certain rock on which a mill dam is placed, the defendant pleaded a special non-tenure; on which issue was taken.

To support their action the demandants gave in evidence a deed of the demanded premises from *Josiah Reed* to *Henry Knox,* father of the demandants, dated 1797, and recorded in 1798 — and a copy of a deed which was testified by one *John Gleason* to have been copied from a deed duly executed and acknowledged, from *Moses Copeland* to said *Reed* of the same premises; and that after said *Knox's* death, which was in 1806, said *Copeland* informed said *Gleason,* that he, having found that his deed to *Reed* was not recorded, and having a demand against

said *Reed*, he had, after *Knox's* decease, taken back the deed to *Reed* and *destroyed* it, (which was testified to be after the conveyance from *Reed* to *Knox*) — and that in that way he had secured his demand against *Reed*, and thought it would be but a trifle out of the estate of *Knox*. It was also testified that said *Gleason* entered under said *Knox* and cut timber upon the lot. It also appeared that at the commencement of this action the defendant was in the possession and occupation of that part of the demanded premises called the "10 acre lot," — and also of about half of that part called the "3 acre lot," or "mill lot," separated by a fence which divided the lot — *W. Blake* being in possession of the other part.

On the part of the defendants were offered in evidence a deed from *William Lewis* to *Moses Copeland* of the 10 acres — a deed from *Moses Copeland* to *Reuben Hill* of the 10 acres, and an undivided moiety of the mill lot, dated 1812 — and the *original deed* of the same from *Reuben Hill* to *Isaac Hill*, "excepting about three acres sold to the Cotton and Woollen "Factory," dated 1821, and recorded *May* 29, 1821; — and a deed of the same, "excepting a small Island at the end of the "stone dam," part of the demanded premises from said *Isaac Hill* to the defendant, dated 1821. The last mentioned deed also conveyed to the defendant one undivided twelfth part of a mill and privilege, the dam of which rested upon said Island or rock, as it was sometimes called. It appeared that said Island was formed by flowing the water by means of the dam, and that the defendant occupied the mill and privilege his twelfth part of the time in sawing. The demandants objected to the deed from *Reuben Hill* to *Isaac Hill* going in evidence to the jury, without proof of its execution; but the objection was overruled by the Court.

One *Daggett* was then called by the demandants, who testified that, 18 or 20 years ago he was employed by *Reuben Hill* to construct a dam across the river at the lower falls, and adjacent to the said Island or rock; and while at work there, said *Reuben* spoke of having years before tried to buy said "ten "acre lot," (which he and others uniformly called the *Knox* lot,) of said *Knox*, but that he held it so high, he could not purchase

it — that he should have located the upper mill differently, ten years before, if he could have purchased of *Knox.* He also testified that *Isaac Hill* and *Samuel Hill,* two sons of *Reuben,* had charge of the business of building the dam, and they settled with him for his services.

*John Gilmore,* testified that, he was foreman of the jury before whom this action was formerly tried; — that *John Gleason,* then alive and since deceased, testified that *Reuben Hill,* before he received said conveyance from *Copeland,* inquired of him respecting the title, and that he informed said *Reuben* of all the facts of the conveyance to *Reed* — of *Copeland's* taking back and destroying it, after *Knox's* death, as before stated; and that he informed *Isaac Hill* of the same facts before *Reuben's* conveyance to him.

It also appeared that said *Isaac* lived with his father at the time *Daggett* constructed said dam, and when his father *Reuben* took said deed from *Copeland,* and for many years after, and had charge of his business — and also that the defendant married a daughter of said *Reuben* and lived in the same family at the time of taking his deed from said *Isaac* — and that the demanded premises were taxed in *Union* to said *Knox* from 1797 to 1806, and then to his heirs.

*Jacob Ring,* testified that he was a member and clerk of the said Cotton and Woollen Factory Corporation, that said *Isaac* and two or three of his brothers, living in the same neighborhood and in the vicinity of the demanded premises, were members of said corporation — that the subject of the *Knox* title to the said 10 acre lot was often discussed at the meetings of the corporation, before they took their deed of *Reuben Hill* of three acres part of the same, and before said *Isaac's* conveyance to the defendant — that said *Isaac* and the rest of the *Hills* were usually present at said meetings, but could not say that he was or was not present when said discussions were had.

There were also in evidence, a deed from *William Lewis* to said *Copeland,* and from the latter to *Blake,* of 140 acres adjoining the demanded premises and including the mill lot and mill privilege, the last of which, contained this recital, " Excepting " only half of mill privilege which now belongs to above said

" *Knox*" — which deed described the bounds of the 140 acres as " beginning at the South West corner of a ten acre lot of land " belonging to *Henry Knox, Esq.*" &c. — " till it comes to the " aforesaid *Knox's* lot ; thence as his line goes to the bounds " first mentioned" — the said 10 acre lot being the demanded premises.

*Isaac Hill* was called, and though objected to by the demandants, was admitted to testify. He testified that, when he received his deed from *Reuben*, his father, he supposed he had a good right to warrant it to him ; — that, he never knew of the said conveyance to *Reed* ; — that he was not present when the Factory Corporation discussed the subject in their meetings ; — that, *Gleason* did not inform him of it ; and that after the former trial *Gleason* admitted he was mistaken in the man, saying it was his brother *Nathan*, whom he informed of it.

*Nathan Hill*, testified that, it was himself who had the conversation with *Gleason*, to which he had testified, and that *Gleason* afterward admitted he was mistaken as to the man.

Upon this evidence the counsel for the demandants contended, 1st, that the defendant occupying and improving the said mill and privilege, the dam being part of the privilege and resting upon a portion of the premises, to which the defendant had pleaded non-tenure, and having a deed of the same conveying it to him in fee, he must be considered in law as in under his deed, in absence of proof to the contrary, and that such occupation constituted him tenant of the freehold.

2. That the defendant being in possession, and occupying at the commencement of this action, a part of the mill lot in severalty under his deed from *Isaac Hill*, whose title is shown to be adverse to the *Knox* title ; and *Blake*, as alleged in the defendant's plea, having recovered against him for his, *Blake's* moiety, the defendant not having any title to *Blake's* moiety must be considered as having held under his deed, against the *Knox* title ; and that such possession and occupation constituted him tenant of the freehold, and that, that issue should be found for the demandants — and the Court was requested to instruct the jury in conformity with these positions.

3. He also contended that *Reuben Hill* having knowledge of the prior conveyance to *Reed*, his taking a deed with such knowledge was fraudulent, and nothing passed by the deed, and that he could pass nothing in the land to his grantee.

4. That it was not necessary that the demandants should prove actual knowledge or personal notice of said conveyance from *Copeland* to *Reed*, in *Isaac Hill* or his grantee ; that the facts in evidence were sufficient in law to put him upon his inquiry into the title, and is like a change of possession, tantamount as to notice, to a recording of the deed ; and that this conveyance could only be avoided, by showing that he did make reasonable inquiry respecting the title without success.

As to the first point made by the demandant's counsel, the *Chief Justice* stated to the jury, that it appeared by the deed of *Isaac Hill* to the tenant, the Island or rock was expressly excepted, and was never conveyed to the tenant ; and that the mere ownership of one twelfth part in common of a certain mill and privilege on the other side of the stream and opposite said rock, and the resting of the dam belonging to said mill against one side of said rock, did not amount to such possession of the rock as to prove the defendant to have been *tenant of the freehold* of said rock, expressly against the terms of the deed above-mentioned.

As to the 2d point, the presiding Judge instructed the jury that, a tenant in common of lands in the enjoyment of his legal rights, must necessarily be in possession of the whole, — that such is the nature of a tenancy in common ; — that, when one enters under a deed, he is presumed to enter and claim according to his title ; that, in the present case, the tenant owned one undivided moiety of the three acres, and that if he had possessed the *whole*, it must, unless proved to the contrary, be presumed to be a possession according to his right to a moiety ; but that it appeared he only *actually* possessed a moiety in pursuance of a partition by a fence, made between him and *Blake* ; and that the jury could judge from the above facts, whether he ever claimed to be tenant of the freehold of more than *one moiety* of the three acres.

Knox & al. *v.* Silloway.

As to the 3d point, it being proved and admitted, that *Reuben Hill* when he received his deed from *Copeland,* knew of the unrecorded and cancelled deed from *Copeland* to *Reed,* the Judge instructed the jury that, in an action between *Reed,* or *Knox,* or *Knox's* heirs and *Reuben Hill,* his title, originating in fraud, could not be sustained ; but that a subsequent purchaser under him, without notice of the above deed to *Reed,* and for a valuable consideration, could hold against the demandants.   Whether *Isaac Hill* or the tenant, at the times they purchased, had, or had not such notice, and were, or were not purchasers for a valuable consideration, the Judge submitted to the jury upon the evidence in the case, adding, that the facts to prove such notice must be clear and satisfactory and not of a doubtful or equivocal character.

He further instructed the jury that, though in the Court of Common Pleas the *general issue* was pleaded as to the rock or Island, and the three acre lot, yet as the defendant under leave to amend, had heretofore amended, by pleading *non-tenure* as to the above parts of the demanded premises, the error in the first mode of pleading ought not to operate as proof to prejudice the tenant in the trial of the issues as they now appeared.

After these instructions to the jury, the counsel for the demandants requested the Judge to instruct the jury further, and as follows :

1. That if the jury should find that, at the time of the commencement of this action, the defendant was in actual possession of any part of the three acre lot, under a deed of release or conveyance to him from *Isaac Hill,* whose title was derived from *Copeland,* the issue respecting that part of the demanded premises, should be found for the demandants.

2. That if the jury should find that the defendant had a deed of conveyance of a mill, or undivided part thereof, and mill privilege, the dam resting upon the rock or Island, part of the demanded premises, and that the defendant occupied the mill, under such deed, and used and occupied the dam, that the issue as to that part was made out for the demandants.

3. That if they should find, that *Reuben Hill* conveyed the premises to *Isaac,* in order to defraud his creditors, and that

*Isaac* had knowledge of such intention or motive, that the conveyance was fraudulent and void as to the demandants, although *Isaac* might have paid a full consideration.

4. That after pleading the general issue as to the rock or Island and the three acre lot, in the Court of Common Pleas, and also in the Supreme Court, and a trial having been had upon such issue in this action, it was evidence to sustain the issue as to those parts on this trial.

But the presiding Judge declined giving the jury any other instructions than those before stated.

Whereupon a bill of exceptions was tendered and allowed; upon which, the case was brought forward and presented to the whole Court.

*Ruggles*, for the demandants.

The giving up and cancelling of the deed of *Copeland* to *Reed*, could not intercept and defeat *Knox's* title derived from *Reed*. It certainly could not thus be defeated in connection with the conveyance to *Reuben Hill*, for he was well knowing to the existence of the unrecorded deed of *Copeland* to *Reed*. The deed from *Copeland* to *Hill*, therefore, was a fraud upon *Knox*, and nothing passed by it. Nor did any thing pass by the deed of *Reuben* to *Isaac Hill*; for though he might have been ignorant of the existence of the unrecorded deed, yet *General Knox*, the father of the plaintiff, had been in possession of the lot in question, 24 years before *Isaac Hill* took his deed. At least he had a deed on record, and timber had been cut under him, which is as much possession as one can have of wild land. This would be sufficient to constitute a disseizin of any one having any interest in the land. Nothing therefore passed by the deed to *Isaac Hill*. *Marshall v. Fiske*, 6 *Mass*. 30.

2. The *recitals* in the deeds through which the defendant claims, *estop* him to deny the plaintiffs' title, and his knowledge of it. Both parties claim under *Reed, Lewis* and *Copeland*. These recitals were at least sufficient to have put the defendant upon inquiry. 1 *Stark. Ev.* 369; *Jackson v. Harrington*, 9 *Cowen's Rep.* 86; *Phillips' Ev.* 410; *Penrose v. Griffith*, 4 *Bin.* 231; *Goodwin v. Dennis*, 4 *Bin.* 327; *Morris v. Van*

*Duren,* 1 *Dal.* 67 ; 3 *Littell's Rep.* 447 ; *Bell v. Witherell,* 2 *Serg. & R.* 350 ; 2 *Serg. & R.* 382 ; 4 *Bin.* 314 ; *Stoever v. Whitman,* 6 *Bin.* 316 ; 1 *Gill & Johnson's Rep.* 270 ; 1 *Stark. Ev.* 304 ; *Dudley v. Sumner,* 5 *Mass.* 451 ; *Shaw v. Poor,* 6 *Pick.* 86.

3. The deed from *Isaac Hill* to the defendant conveys one twelfth part of mill and privilege, the dam of which rests upon the Island, of so much he was tenant of the freehold.   The Island must have been included in the deed, from the nature of the case.   Unless the end at least of the Island upon which the dam rests be granted with the mill and privilege, the latter would be entirely useless.   It therefore passed by the deed, and with the possession, made the defendant, tenant of the freehold. *Cutler v. Tufts,* 3 *Pick.* 278 ; *Sprague v. Snow & al.* 4 *Pick.* 56 ; *Co. on Lit.* 183 ; *Shephard's Touchstone,* 77 ; *Doane v. Broad-street Association,* 6 *Mass.* 332 ; 3 *Bac. Abr.* 396 ; *Shep. Touch.* 96 ; 2 *Rolles' Abr.* 456, *B.* 20 ; 2 *Cro. Rep.* 427 ; *Bac. Abr.* 398.   But if the land did not pass, still, by the deed, the defendant acquired an easement. *Remington on Ejectment,* 130, 131.

4. *Isaac Hill* was inadmissible as a witness.   The tenant claimed a portion of this land under him, and he was interested to sustain his title.

Again, *Isaac Hill* was the lessor of the defendant, and liable on his implied covenants. *Smith v. Chambers,* 4 *Esp. R.* 154 ; *Phillips' Ev.* 49, *note ; ib.* 226, 48 ; 1 *John. Cas.* 175 ; 12 *Johns. R.* 246 ; *Buller's N. P.* 232.

*Isaac Hill* is also interested as a *tenant in common.*

5. The deed from *Reuben Hill* to *Isaac,* should not have been admitted without proof of its execution ; the copy not being produced, but the *original* deed.   1 *Stark. Ev.* 330 ; 5 *Serg. & R.* 314.

The reason why the witnesses should be produced, is because the parties have *agreed* that they should be the witnesses.   It is a rigid rule, and cannot be relaxed, as the Court say in *Massachusetts.*   It is not a mere technical objection.   It was important to the demandants in this case to have the subscribing witnesses produced, inasmuch as they expected to prove by

them, that the conveyance was fraudulent. The rule of Court is in favour of the admission of *copies*, but not of originals without proof of execution. *Ross v. Gould*, 5 *Greenl.* 204. The office copy may be better evidence than the original without proof of the latter, for it may have been altered *since the registry of it.*

*Allen*, for the defendant, cited *Hewes v. Wiswell*, 8 *Greenl.* 94; and *Trull v. Bigelow*, 16 *Mass.* 406. His positions, and reasoning, were principally sustained by the Court and appear in the opinion.

At the next subsequent *May* term in this county, the opinion of the Court was delivered by

MELLEN C. J. — This is a writ of entry in which the demandants count on their own seizin within twenty years, and demand possession of a lot of *thirteen acres*. As to *ten acres* of the demanded premises, commonly called the *ten acre lot* (excepting that part of it which was sold to the Cotton and Woollen Factory) the defendant pleads the general issue, which is joined. As to *one* undivided moiety of three acres, called the *mill lot*, and as to all other parts of the premises demanded, he pleads a general *non-tenure*. And as to the *other* undivided moiety of said *mill lot*, he pleads a recovery of the same, since the commencement of the suit, by one *Walter Blake*, who is alleged to be the *real* demandant in the present action. Issue is joined on the plea of non-tenure, and a verdict has been returned in favour of the defendant. The above plea of recovery by *Walter Blake* was filed by leave of Court, at *September* term, 1832, and to this there has been given since the main argument, a *special demurrer* which will be more particularly noticed in the sequel.

We will in the first place examine the instructions of the Judge in relation to some of the minor questions in the cause, and dispose of them, and conclude with an examination of those of more importance as to the merits, or more interesting in their consequences as to practice; all of which have arisen in the investigation of facts under the general issue.

It is contended that the instructions were incorrect as to one undivided moiety of the *three acre* or *mill lot,* and the plea of non-tenure, as applicable to it. The defendant never pretended to have a title to more than an *undivided moiety.* On this point we think the language of the Judge was correct. It is certainly true, as stated, " that a tenant *in common* of land, " in the enjoyment of his legal rights, must necessarily be in " possession of *the whole ;* that such is the nature of a ten- " ancy in common." The defendant received a deed of a moiety in common ; and, when he entered under the deed, he must be presumed to have claimed and held according to his title. Besides, he *actually* possessed only a moiety, in consequence of a parol division, made between himself and *Blake.* In either view of the facts, touching this part of the cause, we think the instruction was proper ; and under that instruction, the jury have found that he never claimed to be a tenant of the freehold of more than a moiety. Thus *this* objection is at an end.

Again, it is urged that the instruction was erroneous as to the possession or tenure of the *Island* or *rock,* which seem to be used as synonymous terms. In the deed from *Isaac Hill* to the defendant, above-mentioned, the Island or rock is expressly excepted ; and we have no question that the exception is a good one. *Payne & ux. v. Parker, ante.* There is no direct proof of any claim, in contradiction to the terms of the deed. He was an owner of one twelfth part of a mill on the opposite side of the stream and of the adjoining dam, which was erected about twenty years ago by *Reuben* and *Isaac Hill,* who merely rested one end of it against the rock where it still remains. Under the circumstances disclosed by the report, we are satisfied with the instruction given. The fact proved, could never be considered as sufficient proof of a tenure of the freehold of the Island or rock, by the defendant, in direct contradiction to his deed from *Isaac Hill.* This objection, therefore, is not sustained.

Another objection has been urged, in relation to this sharp point in the cause. It has been contended, that inasmuch as in the Court of Common Pleas, the defendant pleaded the *general*

*issue* as to the rock or Island, and the *three acre lot*, and a trial was there had upon that plea, *that fact* is evidence to sustain the issue as *it now stands.* The answer to this objection is an obvious and satisfactory one. The amendment of the plea, we presume, was made for some good reason, in the opinion of the Court which permitted it. It is not a subject of revision now. If an error had been committed in the pleading, which might be prejudicial to the defendant, that error has been corrected by the amendment, for the purposes of justice, which would at once be defeated by allowing it *now* to be considered as *a confession* of a fact which the demandants find necessary to enable them thereby to disprove the plea of non-tenure. The objection is *inter apices legis*, and cannot be allowed to have the desired operation. Such an objection, if sustained, would render all amendments useless. But the amendment has been examined by the full Court, and we are all satisfied the leave to make it was properly granted. This amended plea will be particularly examined, in the close of this opinion, as to its merits and the time when it was filed.

We have thus considered and disposed of the several objections which have been urged by the counsel for the demandants, which have respect to the special pleas in bar and the instructions of the presiding Judge as to the principles of law applicable thereto. It remains for us now to examine those which have been urged as to the ruling of the Judge in regard to the admission of *Isaac Hill* as a witness, and of the *original* deed from *Reuben Hill* to *Isaac Hill* in evidence to the jury, without the usual proof of its execution ; and the alleged incorrectness of the Judge in omitting or declining to give certain requested instructions.. Though the report states the facts of the case with sufficient clearness ; yet it may be useful *here* to give a condensed view of them and comparison of dates, by means of which our opinion may be more intelligible, and the grounds of it more readily understood, than by reference to a long report.

One *William Lewis* was formerly the owner of the land in question, and conveyed the same to *Moses Copeland ;* and both parties claim under *him.* By the evidence introduced by the demandants, it appears that, prior to the sixth of *December,*

1797, the said *Moses Copeland* conveyed the demanded premises to *Josiah Reed*, but the deed was never registered. That on said sixth day of *December*, 1797, the said *Reed*, by his deed of that date, conveyed the same premises in fee to *Henry Knox*, father of the demandants; in which deed, *Reed* states that the same were conveyed to him by *Copeland*. This deed was registered *April* 30, 1798. *Gleason* cut some timber on the land under *Knox*. The non-production of the deed from *Copeland* to *Reed* was accounted for by proof that *Copeland*, after the death of *Henry Knox* in 1806, took back the deed from *Reed* and destroyed it; and having a demand against *Reed* secured it by this arrangement. *November* 10th, 1812, *Copeland* conveyed the same premises to *Reuben Hill*, who at the time of receiving it, had full knowledge of the cancellation of *Copeland's* deed to *Reed* and the circumstances attending it. The deed to *Hill* was registered *March* 19th, 1816. *Reuben Hill*, on the 28th of *May*, 1821, conveyed the 10 acres, and *undivided moiety* of the mill lot to his son *Isaac Hill*, who caused his deed to be registered *May* 29th, 1821. And the same year *Isaac Hill* conveyed to *Silloway* the land, excepting the three acres sold to the Factory. On these facts, if duly proved on the trial, are the demandants entitled to recover, or is the defendant entitled to retain the verdict which the jury returned in his favour?

The general principles of law, applicable to the above facts, are clearly and fully stated in *Trull v. Bigelow*, 16 *Mass.* 406, *McMechan v. Griffin*, 3 *Pick.* 149, *Hewes v. Wiswell*, 8 *Greenl.* 94, as well as in many other cases. It is clear, that if *Reuben Hill* was the defendant in this case, his title deed could not avail him; but the question is whether the case before us furnishes any proof of a *scienter* on the part of *Isaac Hill*, or of *Silloway*; for if not, then they stand on firm ground, and are not affected by the fraud between *Copeland* and *Reed*, though it was well known to *Reuben Hill* — see the cases before cited. But it is contended by the counsel for the demandants, that *Isaac Hill* and *Silloway*, both, had such notice of the conveyance to *Knox*, as to defeat the conveyances under which the defendant claims. The answer to this position is, that *Reed*

never had *any* possession under his unrecorded deed : and the *only* evidence of possession of *Henry Knox,* under his deed from *Reed,* was the cutting of some timber on the land. This was no vissible act of possession. The cutting was by *Gleason* under *Knox :* but, of itself, it furnished to third persons no evidence of title or claim on the part of *Knox ;* and the registry of deeds furnished none of any conveyance of the premises by *Copeland,* prior to his deed to *Reuben Hill,* except what arose from certain recitals in other deeds which will soon be noticed. The records exhibited *Copeland* as the owner, when *Reuben* received his deed, there being on record a deed from *William Lewis* to him, dated *May* 6, and registered *May* 8, 1793. What possession then was there to prevent the operation of the deed from *Reuben Hill* to *Isaac Hill* in 1821, which contains a general warranty of title, and imports a consideration paid, of three hundred dollars. So far from there having been an adverse, exclusive and notorious possession, there was not even a *visible* one by any person : and the jury have found that *Isaac Hill* had *no* knowledge of any conveyance from *Copeland* prior to his deed to *Reuben Hill.* This certainly has put an end to all inquiry on this point, so far as evidence of a *scienter* could be inferred from any possessory acts of *Knox* or his heirs. But it is said, that the *recital* in the deed from *Reed* to *Knox,* in relation to the deed from *Copeland* to *Reed,* amounted to notice to *Isaac Hill,* and also to *Silloway,* of the conveyance to *Reed ;* but why should either of them be bound to look for recitals in deeds executed by persons under whom they *did not* claim, and who did not appear on the record of deeds to have any connection with *Copeland,* the person under whom they *did* claim ? The authorities cited by the demandants' counsel by no means support his position. *Starkie,* 1 *vol. page* 369, says, " It has " been held that a recital of a deed in a *subsequent* deed is ev- " idence of the *former* against a party *to the latter.*" See also note on same page. " The rule of law is, that a deed, con- " taining a recital of another deed, is evidence of the recited " deed against the *grantor* and all persons claiming by title de- " rived to him *subsequently.* But such recital is not evidence " against a *stranger,* nor against one who claims by title derived

Knox & al. *v.* Silloway.

" from the grantor *before* the deed which contains the recital."
According to the principles here stated, the *recital* above-men-
tioned, so far from being *conclusive evidence in law* against the
defendant, and not proper to be referred to the jury, amount
to *no* evidence whatever against him, inasmuch as he does not
claim under *Reed.* With respect to the *recital* in the deed of
*Copeland* to *Blake*, it does not appear that the deed was made
*prior* to the year 1821, or, if it was, that it was registered be-
fore that time : of course, no conclusions can be drawn from it
prejudicial to the rights of the defendant. We have thus far
examined the cause upon the facts we have been considering,
upon the idea that they have been legally proved. But it is
contended, that in two particulars, some of the facts have been
proved by inadmissible evidence. In the *first* place by the in-
troduction of *Isaac Hill* as a witness ; and 2dly, the *original*
deed before-mentioned without proof of its execution. With
respect to the witness we cannot perceive how he is interested
in the event of this cause. It is not contended that he is so,
in consequence of having entered into covenants with the de-
fendant which ought to exclude him ; nor do we see how the
verdict in this cause could be evidence one way or the other, in
an action between the present demandants and the witness.
The objection is placed on the ground, that the relation of les-
sor and lessee subsisted between the witness and the defendant,
and that his testimony tended to strengthen his own title. The
cases cited are to that point. But no such connection or rela-
tion is proved to have existed between them. The witness own-
ed, or at least, had a deed of *all* the Island or rock, and *half*
of the mill lot, excepting the part sold to the Factory. His tes-
timony did not and could not affect his own property.

Before proceeding to consider the objection above stated, re-
specting the admission in evidence of the *original* deed to *Isaac
Hill*, we would merely observe, that we have answered all *other*
objections, and given our opinion on all the particulars of *re-
quested* instructions, except what are contained in the 3d re-
quest and compose the 3d point contended, namely, that *Reu-
ben Hill*, having knowledge of the prior conveyance of *Cope-
land* to *Reed*, his taking a deed with such knowledge was fraud-

ulent, and that nothing passed by the deed, and so *he* could pass nothing to his grantee, though he might have paid a full consideration. Such an instruction was not given, and clearly ought not to have been given in any case, unless the grantee was also conusant of the same facts, or was a *mere* grantee, having paid no consideration ; nor even *then*, in the *present* case, because none but the creditors of *Reuben*, or after purchasers from him, can be permitted to make this objection. The deed was good against all others and passed the estate to the grantee, as the demandants are not his creditors, or after purchasers from him.

We now proceed to the examination of another question. The original deed from *Reuben* to *Isaac Hill*, was duly registered on the day next following its date. We are not called upon in this case to decide, whether a party in a cause is entitled to give in evidence an *original unrecorded* deed to his grantor, (the same deed being less than thirty years old,) without proof of execution. There may be important distinctions between *registered* and *unregistered* deeds, in respect to the point we are considering, and probably there are. As we have not met with any decision, bearing directly on the point presented by the objection, we shall give the reasons on which our opinion is founded, distinctly and at large. The 34th Rule of this Court, established *April Term*, 1822, is in these words, " in all ac-" tions touching the realty, office copies of deeds, pertinent to " the issue, from the registry of deeds, may be read in evidence " without proof of their execution, where the party offering " such office copy in evidence is not a *party* to the deed, nor " claims as *heir*, nor justifies as *servant* of the *grantee* or his " *heirs*." This Rule is in unison with immemorial usage in *Massachusetts*. The Courts of this State have uniformly observed it ; and it is believed that a similar practice has long prevailed in most, if not in all the *New-England States*. It is a departure from the principle and practice in *England*, occasioned by a well known distinction in respect to the custody of title deeds. In that country, title deeds accompany the title which they pass. The purchaser receives the documentary evidence of his title, and is entitled to hold it, while he continues

to hold the estate. Having the *original* conveyances in his possession, he has no occasion to make use of *copies*. But with us the universal practice is for every man to retain possession of his own title deeds. Our rule above-mentioned and our practice conforming to it, are founded upon the presumed fact that none of the deeds under which a party claims, except the deed from his immediate grantor, are in his possession or under his control; hence he may give in evidence copies duly certified by the register of deeds, except in the cases specially named in our rule. A rule of law has long existed in respect to the proof of deeds, which bears a strong resemblance in principle to the rule as to the use of copies of deeds. "If a deed or other instru- "ment, when produced, appear to be thirty years old, no fur- "ther proof is requisite. Since, after that time, it is to be *pre-* "*sumed* that the attesting witnesses are all dead." And the party producing the deed, has the full benefit of the presumption, though the witnesses are living. 1 *Stark.* 343. And he need not call the attesting witnesses. *ib.* — In the case of *Marsh v. Colnett,* 2 *Esp. R.* 665, a deed more than thirty years old was offered in evidence without proof of execution, and though objected to, was admitted. One of the subscribing witnesses was then in court; but *Mr. Justice Yates* declared, that he would not break in upon the rule and require the witness to testify to the fact of execution.

The effect of the rule and practice which we are now considering is, to admit the *facts* stated in the *copy* of a deed to have the same *influence* upon the minds of the jury, as the facts stated in the *original* deed to the party producing it would have, after due proof of its execution. It dispenses with proof of execution in *all* cases but one, namely, the case of a deed to the party himself. It has been supposed that the case of *Woodman v. Coolbroth,* 7 *Greenl.* 181, has indirectly decided the question we are now examining; but such is not the fact; it has merely decided that where a party has, according to our rule and practice, a legal right to use an attested *copy* of a deed, he is not deprived of that right, because he happens to have the *original* deed in his possession. In the above case, *Coolbroth* offered to read the copy of a deed from the demandant

to one *Winslow,* under whom he claimed, which copy was re-
jected, and he then produced the *original,* which was admitted
and he had the benefit of it, but the Court set aside the verdict
and granted a new trial.   The ruling of the Judge deprived
the defendant of a right which was valuable to him.   In the
case before us, the counsel for the defendant happened to have
in his possession at the trial the *original* deed from *Reuben* to
*Isaac Hill,* and not the copy.   As soon as the objection to its
admission was made, he could in half an hour have had it regis-
tered, and have procured a *copy,* duly certified and ready in
Court; and such could not have been rejected by the Court,
according to their own rule, and their own decision in *Wood-
man v. Coolbroth,* notwithstanding the counsel had the original
in his hand.   Now, by what magic has a *copy* from the registry
acquired *more* solemnity and virtue than the *original;* and why
is it entitled to more credit in a court of justice ?   Why is not
a *registered, unproved original* deed as good, as safe, and as
satisfactory evidence, as a certified *copy* of such *unproved
original,* or rather, as a *certified copy* of the *record,* which is
no more than a *copy* of the *original ?*   Is not the supposed dis-
tinction the merest phantom ?   Where is the sound sense of
such a distinction ?   Of what possible use or importance is it
in its application to any one ?   Who can ever be injured by its
abolition in practice ?   Certainly not the objector, because a
*copy* may readily be produced, which dispenses with the proof
which he demands ?   While the above-mentioned rule and prac-
tice are permitted to continue — which are found as *useful* as
they are *acceptable* — would not the asserted distinction, if sanc-
tioned in a court of law, be justly considered a blemish, and
something as unintelligible as it seems to be unmeaning? How-
ever, we do not place our decision of the present question
merely upon the grounds we have thus been stating, but in
connection with *another* fact which has been mentioned, name-
ly, that the deed had been duly registered.   Had it not been
so registered, probably our minds would have been conducted
to a different conclusion, notwithstanding the course of reason-
ing which we have been pursuing.   We now proceed to a fur-
ther view of the subject.

It must be remembered, that in the above-mentioned cases, in which *certified copies* are admitted in evidence, they are admitted, not because the registry of the *original* deed is *full* and *conclusive* proof of the legal execution of it, but because it is *presumptive* and *prima facie* proof that the *original* is what it appears to be, namely, a fair and perfected contract, inasmuch as the person claiming under it has voluntarily placed it on the public records of the county. The Court, therefore, for these reasons and in these cases presume the original deed to have been duly executed, and thus throw the *onus probandi* upon the other party, who, if he can, may impeach the deed as a *forgery*, or show that it was never delivered and perfected by the grantor. He has the same means of obtaining possession of the *original* as the party has who introduces the *copy*, and may thus avail himself of all accessible means of disproving and defeating it. The production in Court of a *copy* duly certified, is proof that the *original* has been registered, and thus displayed to the public eye. Does not precisely the *same fact* appear to the Court on inspection of the *original*? On the back of the deed in question is the certificate of the register that it has been registered on his records. Having the same fact proved as clearly to the Court in one case as in the other, why should not the presumption that the original was duly executed be as influential in one case as the other, and produce the same effect in both, as *prima facie* evidence in the cause, for the purpose and to the extent before mentioned? We are not able to discern any difference. Now, as a party is not bound to prove the execution of the deed of his immediate grantor to himself, if thirty years old, even though the subscribing witnesses should be present in Court, why should he be held to prove the recorded *original* deed *to* his immediate grantor, because it happens to be in his possession and in Court, when a *copy* of it is legal evidence without any such proof? The *reason* on which *both* the before-mentioned rules are founded, does not exist in *either* of the cases we have just stated; yet the rule is admitted to have the same operation and influence as though such reason did exist in full force. As we are not bound by any legal decision on the point before us, we can

discover as little reason, as we feel inclination to extend the
limits of merely technical learning, so far as to include the pre-
sent case, and sustain the objection of the counsel for the de-
mandants. It savors *too little* of sound common sense, and
*too much* of unnecessary refinement and useless distinction. It
seems to be based on the idea that, in legal contemplation, a
*shadow* is of more value than a *substance,* and entitled to more
respectful consideration by the Court, when thus presented as
a subject of judicial decision.

After maturely examining the question, we are satisfied that
the ruling of the Judge was correct in admitting the original
deed without proof of its execution ; and that a course of prac-
tice, in accordance with this decision, can injure no man's rights,
but on the contrary, will advance the cause of justice ; — may
save much needless expense and trouble, and render the rule
of Court consistent in relation to its consequences. From a
view of all the questions submitted, the Court are of opinion
that none of the objections which have been urged, and which
we have been considering, can be sustained.

It now remains for us to examine the merits of the plea
which was mentioned in the commencement of this opinion, as
filed by way of amendment under leave of Court, the particu-
lars of which it is proper here to notice. When this cause was
argued upon the exceptions taken to the rulings and instructions
of the Judge at the trial, upon which our opinion has just been
given, it was not particularly noticed that no issue had been
joined upon the above-mentioned plea, as to one undivided
moiety of the mill lot, in which plea the defendant states a
recovery of the same by *Walter Blake,* for whose use and ben-
efit the present action is brought. Since the above argument,
the demandants have demurred specially to said plea, and the
merits of it, having been submitted without any formal argu-
ment, we have carefully examined it, and now proceed to give
our opinion. The substantial allegation of the plea is, that
*Blake,* the *real* demandant in this action, and for whose use it
was brought, on the 8th of *December,* 1825, commenced an
action against the defendant for the said moiety of said mill
lot, and that such proceedings were had in the action, that at

Knox & al. *v.* Silloway.

the term of this Court, held here, on the third *Tuesday* of *September*, 1828, the said *Blake* recovered judgment for the premises then demanded, that on the 21st of *March*, 1829, he took out his writ of possession on said judgment, by force of which he became seised of said premises, *prout patet per recordum.* The above facts are pleaded *in bar of the action*, as to the demanded moiety; and we think they were *so* pleadable. *Banker v. Ash*, 9 *Johns.* 250. The learned author of the treatise on the pleadings and practice in *Real Actions*, *page* 164, says, " Although a demandant had a good cause of action at the " time of commencing his suit, yet his estate may be afterwards " determined or his right of action otherwise destroyed by his " own act. In such a case the fact should be pleaded in bar of " the further maintenance of the action." He has furnished no form of a plea in *abatement* in such a case. Thus the *first* cause of demurrer seems not to be well assigned. The *second* is, that the facts are pleaded *generally* in bar, and not in bar of the *further* maintenance of the action. From the nature of the plea, and the time when it was pleaded, it could not be a bar, except to the *further* maintenance of the action as to the moiety in question. It could not possibly have any respect to the period between the date of the writ and the time when it was pleaded. Why then should the plea be adjudged bad, even on a special demurrer, because it does not state in express terms that limitation which the law imposes? The plea distinctly states those facts which demonstrate that it is relied on in bar of the *further* maintenance of the action as to the moiety. The act abolishing special pleading in this State and substituting *brief statements* in place of special pleas, was passed on the 30th of *March*, 1831. The present action was commenced some years prior to that time and special pleas in bar filed; but the plea we are now examining was not filed till *after* the act was passed, namely, at *September* term, 1832: and though this Court has *permitted* special pleas in bar to be filed in cases commenced *before* the act was passed, where counsel preferred it, still the *right* of a defendant, in such actions, to avail himself of the benefit of the act, if he be inclined so to do, has not been denied. We are not aware that we have since

the above statute was passed decided any cause on demurrer, upon mere *informality* in pleading. In the case of *Potter v. Titcomb,* 7 *Greenl.* 301, a special demurrer was given to the surrejoinder ; but the Court did not examine its merits, but decided the cause in favour of the defendant on the ground of a *substantial* defect in the replication. If the facts stated in the plea before us, are such as to bar the plaintiffs from the *further* maintenance of the action as to the moiety of the mill lot, we ought to give effect to them and consider the plea in the nature of a *brief statement,* filed, as it was, after the act of abolition was passed, rather than defeat its object by deciding against the plea on the *merest point of technical learning.* The statute was made to do away such niceties, and enable parties to arrive at the merits of a cause without the observance of them. A good plea in bar does not differ from a brief statement; except it is not, or need not be so particular. The law requires no particular form. A plea in bar, good *in substance,* is no better than a good brief statement. It would be doing violence to the meaning and spirit of the act to sustain the above objection to the plea. We therefore are of opinion that this *second* cause of demurrer *is not well assigned.*

The *third* and *fourth* causes assigned, may be considered together. The plea ought not to deny the alleged *disseizin* of the demandants nor the defendant's *seizin* at the time the action was commenced. The plea, from its nature, has no connection with those facts ; or, at least, it does not rely upon them ; both may be admitted to be true, in perfect consistency with the plea. But it is stated in the last clause of the *third* cause assigned, and also in the *fourth* cause assigned, that the defendant does not deny his possession at the time of plea pleaded, or that *Blake* entered and expelled the defendant. The facts thus stated seem to contradict the record ; for the plea avers the recovery of judgment by *Blake,* and his sueing out his writ of possession, and then states, " *by force of which* the " said *Blake* became seised of said premises, as by the record " thereof now remaining in said Court appears." If *Blake* did become seised by force of his writ of possession, why did he not in some proper form traverse that fact, instead of admit-

ting it by his demurrer? But it *is* admitted that he became *seised* by force of the writ of possession, and, of course, before the return day of the writ; consequently, the defendant could not *also* be seised at the same time. Even if both had afterwards continued in possession, that would not alter the case, for where the possession is mixed, the law considers the *seizin* to be in him who has the *right;* and in the present case the judgment which *Blake* recovered established the right in him. But there was no *mixed* possession; *Blake* became seised, and that terminated the seizin of the defendant. We might go one step further and say, that if no writ of possession had ever issued, still, the judgment gave *Blake* a *right of entry,* and to become *seised,* if he could peaceably; — and the plea states that *he did become seised* of the premises, which fact is not denied. The *fifth* cause assigned is virtually disposed of already by the opinion, as given above, that a plea *in bar,* stating the demandant's entry and seizin *since the commencement of the action,* is good, though not since the *last continuance.* We are all of opinion that the plea in bar is good and sufficient; and that there must be judgment on the verdict. But the defendant is to tax no costs prior to *May* term, 1833, at which term the amended plea was filed.